Slip Op. 20-27

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEBITZ FLANGES WORKS PRIVATE
LIMITED,

        Plaintiff,

v.

UNITED STATES,

        Defendant,

and

 COALITION OF AMERICAN FLANGE
PRODUCERS,

        Defendant-Intervenor.

Before: Judge Gary S. Katzmann
Court No. 18-00229

## <u>OPINION</u>

[The court sustains Commerce's Final Antidumping Duty Determination.]

Dated: March 3, 2020

<u>Peter Koenig</u>, Squire Patton Boggs (US) LLP, of Washington, DC, argued for plaintiff.

<u>Geoffrey M. Long</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With him on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.  Of counsel <u>Daniel J. Calhoun</u> and <u>Kirrin Ashley Hough</u>, Office of the Chief Counsel for Trade Enforcement & Compliance, Office of the General Counsel, U.S. Department of Commerce, of Washington, DC.  With them on the brief was <u>Caroline D. Bisk</u>.

<u>Enbar Toledano</u>, Wiley Rein LLP, of Washington, DC, argued for defendant-intervenor.  With her on the brief were <u>Daniel B. Pickard</u>, <u>Stephanie M. Bell</u> and <u>Cynthia C. Galvez</u>.

Katzmann, Judge:  This case presents the potential tension in the administrative process between the statutory obligation of an agency to render its determinations within clear time deadlines and the ability of parties to participate in a meaningful fashion in that process.  It involves the application of adverse inferences to a mandatory respondent in an antidumping ("AD") investigation by the U.S. Department of Commerce ("Commerce"), where the respondent failed to provide timely and complete information in compliance with Commerce's deadlines and guidelines.  Plaintiff Bebitz Flanges Works Private Limited ("Bebitz"), a foreign producer and exporter of stainless steel flanges from India, brings this action against the United States ("the Government") to challenge Commerce's <u>Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Critical Circumstance Determination</u>, 83 Fed. Reg. 40,745 (Dep't Commerce Aug 16, 2018) ("<u>Final Determination</u>"), and accompanying issues and decision memorandum (Dep't Commerce Aug. 10, 2018), P.R. 227 ("IDM"), in which Commerce used adverse inferences to set an AD duty rate for Bebitz and its affiliates.  Bebitz requests that the court "remand Commerce's decision for a decision in accordance with law and supported by substantial evidence."  Pl.'s Rule 56.2 Mot. for J. on the Agency Rec. and Opening Br. at 6, June 7, 2019, ECF No. 25 ("Pl.'s Br.").  The Government responds that the court should "reject Bebitz's challenges and sustain Commerce's determination." Def.'s Resp. to Pl.'s Mot. for J. on the Agency Rec. at 1, Aug. 16, 2019, ECF No. 29 ("Def.'s Br.").  The court now sustains the <u>Final Determination</u> as supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

### I.    *Legal*

To ameliorate trade distortions caused by unfair economic practices, Congress enacted the
Tariff Act of 1930, [1] which empowers Commerce to investigate potential dumping or subsidies,
and if appropriate, issue orders imposing duties on the subject merchandise.  Sioux Honey Ass'n
v. Hartford Fire Ins. Co., 672 F.3d 1041, 1046–47 (Fed. Cir. 2012).  These AD and countervailing
duty ("CVD") actions are intended to be remedial, not punitive, in nature, Chaparral Steel Co. v.
United States, 901 F.2d 1097, 1103 (Fed. Cir. 1990), and it is Commerce's duty to determine
margins as accurately as possible, Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed.
Cir. 1990).  Pursuant to 19 U.S.C. § 1673, Commerce imposes AD duties on foreign goods if they
are being or are likely to be sold in the United States at less than fair value and the International
Trade Commission ("ITC") determines that the sale of the merchandise at less than fair value
materially injures, threatens, or impedes the establishment of an industry in the United States.  See
also Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1306 (Fed. Cir. 2017);
Shandong Rongxin Imp. & Exp. Co. v. United States, 42 CIT __, __, 331 F. Supp. 3d 1390, 1394
(2018).  "Sales at less than fair value are those sales for which the 'normal value' (the price a
producer charges in its home market) exceeds the 'export price' (the price of the product in the
United States)."  Apex Frozen Foods, 862 F.3d 1322, 1326 (Fed. Cir. 2017) (quoting Union Steel

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provision of Title 19
of the U.S. Code, 2012 edition.  Citations to 19 U.S.C. § 1677e, however, are not to the U.S. Code
2012 edition, but to the unofficial U.S. Code Annotated 2018 edition.  The current U.S.C.A.
reflects the amendments made to 19 U.S.C. § 1677e (2012) by the Trade Preferences Extension
Act of 2015, Pub. L. No. 114–27, § 502, 129 Stat. 362, 383–84 (2015) ("TPEA").  The TPEA
amendments apply to determinations made on or after August 6, 2015, and therefore, apply to this
proceeding.  See Dates of Application of Amendments to the Antidumping and Countervailing
Duty Laws Made by the Trade Preferences Extension Act of 2015, 80 Fed. Reg. 46,793, 46,794
(Dep't Commerce Aug. 6, 2015).

v. United States, 713 F.3d 1101, 1103 (Fed. Cir. 2013)).  The amount of the AD duty is "the amount

by which the normal value exceeds the export price (or the constructed export price) for the

merchandise."  19 U.S.C. § 1673.  See also Shandong Rongxin, 331 F. Supp. 3d at 1394.

### A.  Reliance on Facts Otherwise Available and Adverse Facts Available

In investigating whether foreign goods are being sold in the United States at less than fair

value, Commerce may select and issue questionnaires to mandatory respondents[2] to gather

information for its determination.  See 19 U.S.C. § 1677f-1(c)(2).  Questionnaire responses are

intended to give Commerce the information necessary to determine whether dumping is occurring.

See, e.g., Letter from Paul Walker, Program Manager AD/CVD Operations, to Peter Koenig,

Squire Patton Boggs LLP (Oct. 3, 2017), P.R. 8 ("Original Questionnaire").  Where Commerce

determines that dumping is occurring, Commerce uses the information collected to calculate the

margin at which goods are being dumped into the United States and the corresponding AD duty

rate to counter this dumping.  See, e.g., id.  Where an agency's request is clear and relevant to the

investigation, 19 U.S.C. § 1677m requires a respondent to timely "prepare an accurate and

complete record in response to questions plainly asked by Commerce."  Tung Mung Dev. Co. v.

---

[2] In AD investigations or administrative reviews, Commerce may select mandatory respondents
pursuant to 19 U.S.C. § 1677f-1(c)(2), which provides:

> If it is not practicable to make individual weighted average dumping margin
> determinations under paragraph (1) because of the large number of exporters or
> producers involved in the investigation or review, the administering authority may
> determine the weighted average dumping margins for a reasonable number of
> exporters or producers by limiting its examination to--
>
> > (A) a sample of exporters, producers, or types of products that is
> > statistically valid based on the information available to the
> > administering authority at the time of selection, or
>
> > (B) exporters and producers accounting for the largest volume of the
> > subject merchandise from the exporting country that can be
> > reasonably examined.

United States, 25 CIT 752, 758, 23 ITDR 1775 (2001) (citing Olympic Adhesives, Inc. v. United

States, 899 F.2d 1565, 1571–72 (Fed. Cir. 1990)).  If Commerce deems a response to its request

deficient, then Commerce "shall promptly inform the person submitting the response of the nature

of the deficiency and shall, to the extent practicable, provide that person with an opportunity to

remedy or explain the deficiency in light of the time limits established for the completion of

investigations or reviews under this subtitle."  19 U.S.C. § 1677m(d).  Commerce provides this

notice and the opportunity to remedy deficiencies through issuance of a supplemental

questionnaire.

    In order to meet its statutory deadlines, Commerce generally has discretion to create its

own rules of procedure related to the development of record information.  PSC VSMPO–Avisma

Corp. v. United States, 688 F.3d 751, 760–61 (Fed. Cir. 2012) (citing Vt. Yankee Nuclear Power

Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 543–44, 564 (1978) ("Absent constitutional

constraints or extremely compelling circumstances the administrative agencies should be free to

fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them

to discharge their multitudinous duties.")).  Commerce's exercise of its discretion, however, must

be reasonable in light of its statutory obligations.  See Sterling Fed. Sys., Inc. v. Goldin, 16 F.3d

1177, 1182 (Fed. Cir. 1994) (noting that the agency abuses its discretion when its decision is

"clearly unreasonable, arbitrary, or fanciful").  In the context of AD proceedings, while Commerce

clearly has the discretion to regulate administrative filings, that discretion is bounded at the outer

limits by the obligation to carry out its statutory duty of "determin[ing] dumping margins 'as

accurately as possible.'"  NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995)

(quoting Rhone Poulenc, 899 F.2d at 1191).

If a party fails to satisfactorily respond to Commerce's requests for "necessary information" to calculate a dumping margin by (1) withholding requested information, (2) failing to provide information by the submission deadlines or in the form or manner requested, (3) significantly impeding a proceeding, or (4) providing information that cannot be verified, Commerce shall use facts otherwise available to calculate the margin.  19 U.S.C. § 1677e(a)(2).  "The use of facts otherwise available . . . is only appropriate to fill gaps when Commerce must rely on other sources of information to complete the factual record." Zhejiang Dunan Hetian Metal Co. v. United States, 652 F.3d 1333, 1346 (Fed. Cir. 2011) (citing Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381 (Fed. Cir. 2003)).

Furthermore, under 19 U.S.C. § 1677e(b)(1), Commerce may apply adverse facts available ("AFA") when Commerce "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information[.]"  A respondent does not cooperate to the "best of its ability" when it fails to "put forth its maximum effort to provide Commerce with full and complete answers to all inquiries."  Nippon Steel, 337 F.3d at 1382.  See also Dillinger France S.A. v. United States, 42 CIT __, __, 350 F. Supp. 3d 1349, 1356 (2018).  The Federal Circuit in Nippon Steel explained that Commerce must make an objective and subjective determination regarding respondent's efforts in assessing whether it acted to the best of its ability.  337 F.3d at 1382–83.  The Federal Circuit clarified that this test applies "regardless of motivation or intent" on the part of the respondent, but that it simply "does not condone inattentiveness, carelessness, or inadequate record keeping." Id.

The statute explicitly provides Commerce with the discretion to select among any dumping margins "under the applicable [AD] order," including "the highest such rate or margin." 19 U.S.C. § 1677e(d)(1)(B)–(2).   "[W]here there is useable information of record but the record is

incomplete," Commerce applies partial AFA.  Wash. Int'l Ins. v. United States, 33 CIT 1023, 1035

n.18, 31 ITRD 1803 (2009) (citing Yantai Timken Co., Ltd. v. United States, 31 CIT 1741, 1746–

48, 521 F. Supp. 2d 1356, 1364–65 (2007), aff'd 300 Fed. Appx. 934 (Fed. Cir. 2008)).  In contrast,

when "none of the reported data is reliable or usable," Mukand, Ltd. v. United States, 767 F.3d

1300, 1305 (Fed. Cir. 2014), that is, when it "exhibit[s] pervasive and persistent deficiencies that

cut across all aspects of the data," Zhejiang, 652 F.3d at 1348 (citation omitted), Commerce applies

total AFA.

## II.    *Factual and Procedural History*

Commerce initiated an AD investigation into imported steel flanges from India on

September 11, 2017, based on a petition from the Coalition of American Flange Producers

("Coalition"), the defendant-intervenor in the present case.  See Stainless Steel Flanges from India

and the People's Republic of China: Initiation of Less-Than-Fair-Value Investigations, 82 Fed.

Reg. 42,649, 42,649 (Dep't Commerce Sept. 11, 2017), P.R. 1.  Coalition alleged in its petition

that  U.S. domestic producers of steel flanges were threatened with material injury based on less-

than-fair-value imports from India.  Id.  The investigation covered the period of July 1, 2016

through June 30, 2017.  Id.  Commerce selected Bebitz as a mandatory respondent in its

investigation.  Memorandum from Courtney Canales, Int'l Trade Compliance Analyst, AD/CVD

Operations, to Edward Yang, Senior Dir., AD/CVD Operations, (Oct. 3, 2017), P.R. 19.

Commerce determined that it would treat Bebitz and its affiliates, Bebitz USA, Inc., Flanschen

werk Bebitz GmbH ("FBG"), Viraj Profiles Limited ("Viraj"), and Viraj USA, Inc., as a single

entity for purposes of the investigation.[3]  See Stainless Steel Flanges From India: Preliminary

---

[3] References to Bebitz throughout this opinion encompass this single entity.

Affirmative Determination of Sales at Less Than Fair Value, 83 Fed. Reg. 13,246, 13,247 n.7

(Dep't Commerce Mar. 28, 2018), P.R. 238.

### A.  Original Questionnaire and Responses

Bebitz and its affiliates were required to complete responses to a comprehensive

questionnaire from Commerce.  See Original Questionnaire.  Commerce issued its questionnaire

to Bebitz on October 3, 2017, the same day it selected Bebitz as a mandatory respondent.  See id.

The questionnaire contained four parts, labelled Sections A through D.  Id.  The response to Section

A was due October 24, 2017, and the responses to Sections B through D were due November 17,

2017.  See id.; Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Nov.

16, 2017), P.R. 33 ("First Sec. B–D Extension Request").  After Commerce partially granted an

extension of time, moving the deadline to October 31, 2017, Bebitz timely submitted the response

to Section A.  See Memorandum from Julia Hancock, Senior Int'l Trade Compliance Analyst,

Enf't and Compliance, to The File (Oct. 20, 2017), P.R. 29; Letter from Peter Koenig, Squire

Patton Boggs LLP, to Sec'y of Commerce (Oct. 31, 2017), P.R. 31.

Commerce then fully or partially granted[4] four extensions of time, at Bebitz's request, for

responses to Sections B through D.  Bebitz first requested an extension to December 1, 2017.  First

Sec. B–D Extension Request.  Commerce partially granted the extension, moving the deadline to

November 24, 2017.  Memorandum from Julia Hancock, Senior Int'l Trade Compliance Analyst,

Enf't and Compliance, to The File (Nov. 16, 2017), P.R. 35. ("First Sec. B–D Extension Grant").

Bebitz then requested another three extensions.  Letter from Peter Koenig, Squire Patton Boggs

LLP, to Sec'y of Commerce (Nov. 20, 2017), P.R. 37; Letter from Peter Koenig, Squire Patton

---

[4] Where Commerce granted some, but less than the full, additional time requested the court refers
to this as a "partial grant."  Bebitz uses the term "denial" or "partial denial" when referring to the
same result.  See, e.g., Pl.'s Br. at 3.

Boggs LLP, to Sec'y of Commerce (Nov. 29, 2017), P.R. 42; Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Nov. 30, 2017), P.R. 46.  Commerce granted these additional extensions for responses to Sections B through D.  Memorandum from Julia Hancock, Senior Int'l Trade Compliance Analyst, Enf't and Compliance, to The File (Nov. 20, 2017), P.R. 40; Memorandum from Courtney Canales, Int'l Trade Compliance Analyst, AD/CVD Operations, to The File (Nov. 29, 2017), P.R. 44; Memorandum from Courtney Canales, Int'l Trade Compliance Analyst AD/CVD Operations, to The File (Dec. 1, 2017), P.R. 48.  Thus, Bebitz timely submitted its response on December 1, 2017, the date of its first extension request.  See Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Dec. 1, 2017), P.R. 50.  Upon granting Bebitz's November 16, 2017 extension, Commerce notified Bebitz that it would likely issue supplemental questionnaires and that it "may not be able to grant additional extensions."  First Sec. B–D Extension Grant.

Throughout January 2018, Bebitz and Commerce repeatedly communicated about the submission of databases to Commerce containing Bebitz's sales information, which were necessary to Commerce's investigation.  Bebitz requested four exemptions and/or extensions of time to submit information requested by Commerce in its original questionnaires.  Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Jan. 8, 2018), P.R. 66; Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Jan. 11, 2018), P.R. 68; Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Jan. 16, 2018), P.R. 72; Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Jan. 16, 2018), P.R. 76. Ultimately, Commerce exempted Bebitz from the usual database formatting requirements and allowed Bebitz to submit sales data in Excel spreadsheets.  Letter from Julia Hancock, Senior Int'l Trade Compliance Analyst, Enf't and Compliance, to Peter Koenig, Squire Patton Boggs LLP

(Jan. 16, 2018), P.R. 79 ("Database Accommodation Letter"). As explained below, the sales databases never made it into the record because Commerce rejected Bebitz's final attempt to submit them as incomplete and untimely. See Memorandum from James Maeder, Senior Dir., AD/CVD Enf't, to Gary Taverman, Associate Deputy Assistant Sec'y, AD/CVD Operations, re: Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Stainless Steel Flanges from India at 11–13 (Mar. 19, 2018), P.R. 222 ("Preliminary Decision Memo").

### B. Supplemental Questionnaires and Responses

Two weeks after receiving Bebitz's final response to its original questionnaire, Commerce determined that additional information was necessary and issued the first supplemental questionnaire. Letter from Paul Walker, Program Manager Enf't and Compliance, to Peter Koenig, Squire Patton Boggs LLP (Dec. 15, 2017), P.R. 53 ("First Suppl. Questionnaire"). The letter accompanying the first supplemental questionnaire stated that Commerce had "identified deficiencies which require additional information." Id. at 1. This questionnaire provided a detailed list of formatting and informational deficiencies in Bebitz's original response. See id. at 3–6. In total, over the course of the investigation, Commerce issued eight supplemental questionnaires to Bebitz. First Suppl. Questionnaire; Letter from Commerce to Peter Koenig, Squire Patton Boggs LLP (Jan. 12, 2018), P.R. 70; Letter from Paul Walker, Program Manager, Enf't and Compliance, to Peter Koenig, Squire Patton Boggs LLP (Jan. 26, 2018), P.R. 94; Letter from Paul Walker, Program Manager Enf't and Compliance, to Peter Koenig, Squire Patton Boggs LLP (Feb. 5, 2018), P.R. 112 ("Suppl. Questionnaire C"); Letter from Michael Martin, Supervisory Accountant, Enf't and Compliance, to Peter Koenig, Squire Patton Boggs LLP (Feb. 7, 2018), P.R. 143 ("Suppl. Questionnaire D"); Letter from Paul Walker, Program Manager, Enf't and Compliance, to Peter

Koenig, Squire Patton Boggs LLP (Feb. 8, 2018), P.R. 153; Letter from Michael Martin,

Supervisory Accountant, Enf't and Compliance, to Peter Koenig, Squire Patton Boggs LLP (Feb.

8, 2018), P.R. 171 ("Suppl. Questionnaire V"); Letter from Paul Walker, Program Manager, Enf't

and Compliance, to Peter Koenig, Squire Patton Boggs LLP (Feb. 13, 2018), P.R. 185.[5] Bebitz

requested extensions on each. See, e.g., Letter from Peter Koenig, Squire Patton Boggs LLP, to

Sec'y of Commerce (Dec. 26, 2017), P.R. 60; Letter from Peter Koenig, Squire Patton Boggs LLP,

to Sec'y of Commerce (Jan. 17, 2018), P.R. 82; Letter from Peter Koenig, Squire Patton Boggs

LLP, to Sec'y of Commerce (Jan. 31, 2018), P.R. 108; Letter from Peter Koenig, Squire Patton

Boggs LLP, to Sec'y of Commerce (Feb. 1, 2018), P.R. 110. Commerce issued Supplemental

Questionnaire C regarding Section C of the original questionnaire on February 5, 2018. Suppl.

Questionnaire C. On February 7–8, 2018, Commerce issued two additional questionnaires

regarding Bebitz's responses to Section D of the original questionnaire: Supplemental

Questionnaire D regarding Bebitz and Supplemental Questionnaire V regarding Bebitz's affiliate

Viraj. See Suppl. Questionnaire D; Suppl. Questionnaire V.

Bebitz requested two extensions for Supplemental Questionnaire C. Commerce granted

the first of Bebitz's extension requests, extending the deadline four days to February 16, 2018 at

12:00 p.m. Memorandum from Julia Hancock, Senior Int'l Trade Compliance Analyst, Enf't and

Compliance, to The File (Feb. 9, 2018), P.R. 182. Bebitz then requested a second extension. Letter

from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Feb. 15, 2018), P.R. 201.

Commerce denied this second request because of: (1) its previous grant of an extension to Bebitz;

(2) previous requests for the same information from Bebitz; (3) previous difficulties obtaining

---

[5] The court addresses only the supplemental questionnaires and subsequent responses at issue in the present case, namely those that were ultimately rejected by Commerce as untimely and incomplete.

missing information from Bebitz; (4) and Bebitz's mischaracterization of itself as a first-time respondent. Memorandum from Julia Hancock, Senior Int'l Trade Compliance Analyst, Enf't and Compliance, to The File (Feb. 15, 2018), P.R. 204 ("Feb. 15 Extension Denial"). Bebitz submitted a response on February 16, 2018 at 4:40 p.m. Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Feb. 16, 2018), P.R. 207. Commerce rejected this response as incomplete and untimely because it was submitted more than four hours after the deadline. Letter from James Doyle, Dir. AD/CVD Operations, to Peter Koenig, Squire Patton Boggs LLP (Mar. 1, 2018), P.R. 211 (noting that Commerce previously warned Bebitz that untimely responses would be rejected). As Commerce later explained in its preliminary determination, "[s]hortly before the deadline of 12:00 p.m. on February 16, 2018, Bebitz and its affiliates submitted portions of their supplemental questionnaire response but did not submit the complete narrative response, nor sales databases with calculation worksheets by the deadline nor did Bebitz notify Commerce that it experienced filing issues until after the deadline." Preliminary Decision Memo at 13.

On February 14, 2018, Bebitz requested ten-day extensions to respond to Supplemental Questionnaire D and Supplemental Questionnaire V. Letter from Peter Koenig, Squire Patton Boggs LLP, to Sec'y of Commerce (Feb. 14, 2018), P.R. 192. Commerce denied the request as to Bebitz, citing its need for the requested information and noting that the investigation could be extended no further because of its statutory deadline of March 19, 2018 to issue a preliminary decision. See Memorandum from Julia Hancock, Senior Int'l Trade Compliance Analyst, Enf't and Compliance, to The File (Feb. 14, 2018), P.R. 195; Memorandum from Julia Hancock, Senior Int'l Trade Compliance Analyst, Enf't and Compliance, to The File (Feb. 14, 2018), P.R. 198 ("Feb. 14 Extension Resp."). Commerce partially granted the request as to Viraj, extending the deadline to February 20, 2018. Feb. 14 Extension Resp. Bebitz submitted responses to

Supplemental Questionnaire D and Supplemental Questionnaire V on February 21, 2018 and

February 20, 2018, respectively.  *See* Letter from James Doyle, Dir., AD/CVD Operations, to Peter

Koenig, Squire Patton Boggs LLP (March 1, 2018), P.R. 214.   Commerce rejected Bebitz's

responses to Supplemental Questionnaire D and Supplemental Questionnaire V as untimely and

incomplete because Bebitz submitted an incomplete response for each.  Id. at 1.  Bebitz's next day

submissions of confidential versions of the responses included additional cost and sales

information that was not included with its original public submissions.   Commerce, therefore,

deemed them untimely.  Id. at 2–3.

### C.  *Commerce's Determination*

Commerce then published the preliminary results of its investigation and later affirmed

those results in its Final Determination on August 16, 2018.  *See* Final Determination.   Commerce

applied an AD duty rate of 145.25% to Bebitz, which it determined by applying total adverse

inferences and facts available.  Id. at 40,746.   Commerce applied AFA because "the Bebitz/Viraj

single entity failed to provide the following: (1) complete, reliable U.S. sales databases and

reconciliations from Bebitz, Bebitz USA and FBG; (2) complete, reliable cost databases and

reconciliations from Bebitz and Viraj; and (3) a complete sales reconciliation from Viraj and

consistent responses regarding missing sales information from Viraj."   IDM at 10.   In short,

Commerce determined that Bebitz failed to provide complete or reliable information that

Commerce could use to calculate Bebitz's AD duty rate.

On November 8, 2018, Bebitz filed this suit to challenge the Final Determination.

Summons, ECF No. 1.  Coalition moved to intervene in this case as a defendant-intervenor on

December 19, 2018, ECF No. 11, and the court granted that motion on December 20, 2018, ECF

No. 15.  Before the court now is Bebitz's motion for judgment on the agency record.  *See* Pl.'s Br.

Bebitz alleges that Commerce failed to give it sufficient time to respond to questionnaires by delaying the issuance of supplemental questionnaires and not granting in full its requests for extensions. Id. at 1. Thus, Bebitz claims that Commerce's application of AFA to determine Bebitz's AD duty rate was unsupported by substantial evidence and not in accordance with law. Id. The Government and Coalition responded to this motion, arguing that the Final Determination should be sustained because record evidence fully supports Commerce's issuance of supplemental questionnaires, exercise of discretion in responding to Bebitz's extension requests, and application of AFA. Def.'s Br. at 7; Resp. Br. of Def.-Inter. The Coalition of American Flange Producers at 9, Aug. 16, 2019, ECF No. 30 ("Def.-Inter.'s Br."). Bebitz filed its reply on September 23, 2019. Plaintiff Bebitz Resp. to Opp. Reply, Sept. 23, 2019, ECF No. 34 ("Pl.'s Reply"). The court held oral argument on February 5, 2020. ECF No. 47.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a. The court may review final affirmative determinations in CVD or AD duty proceedings under 19 U.S.C. § 1516a(a)(2)(B)(i) and will hold unlawful those agency determinations which are unsupported by substantial evidence on the record or otherwise not in accordance with law under 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Commerce's application of adverse inferences in the calculation of Bebitz's AD duty rate was supported by substantial evidence and in accordance with law. Bebitz unpersuasively argues that Commerce acted without substantial evidence and contrary to law by (1) failing to give Bebitz timely or sufficient notice of deficiencies in its original questionnaire; (2) failing to fully grant Bebitz's extension requests to allow Bebitz to sufficiently respond to Commerce's questionnaire

and supplemental questionnaires; and (3) concluding that Bebitz did not act to the best of its ability

in responding to Commerce's questionnaires in order to justify the application of adverse

inferences.  Pl.'s Br. at 1.

The court agrees with the Government and Coalition that Commerce acted based on

substantial evidence and otherwise in accordance with law in (1) issuing supplemental

questionnaires; (2) responding to Bebitz's requests for extensions of time; and (3) applying AFA

to calculate Bebitz's AD duty rate.  See Def.'s Br. at 7; Def.-Inter.'s Br. at 7–25.  Relevant to each

of these conclusions is the fundamental tenet that respondents must timely "prepare an accurate

and complete record in response to questions plainly asked by Commerce."  Tung Mung Dev., 25

CIT at 758 (quotations omitted).  Because Commerce lacks subpoena power over the foreign

entities from which it seeks information during its investigations, Essar Steel Ltd. v. United States,

678 F.3d 1268, 1276 (Fed. Cir. 2012), Congress imbued Commerce with the ability to use AFA

when respondents fail to provide necessary information in a timely manner.  See, e.g., 19 U.S.C.

§§ 1677m(d), 1677e (allowing Commerce to disregard untimely submissions and use facts

otherwise available and AFA); Uruguay Round Agreements Act, Statement of Administrative

Action, H.R. Doc. No. 103-316, vol. 1 at 868 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4198

(facts available rules are "an essential investigative tool in [AD/CVD] proceedings.").  Thus, the

court rejects Bebitz's arguments and sustains Commerce's Final Determination.

## I.    *Commerce Provided Bebitz Prompt Notice of Deficiencies and Sufficient Opportunity to Respond to its Requests for Information.*

Bebitz first claims that "Commerce failed its statutory duty to promptly notify a respondent

of any deficiencies in its questionnaire response."  Pl.'s Br. at 1.  In making this claim, Bebitz

points to the applicable statutory requirements and Commerce's own Antidumping Manual, id. at

2, which Commerce uses for "the internal training and guidance of Enforcement and Compliance

(E&C) personnel," U.S. Dept. of Commerce, Int'l Trade Admin., Antidumping Manual, Ch. 1 at

1 (2015) ("Antidumping Manual").  Pursuant to 19 U.S.C. § 1677m(d), Commerce "shall promptly

inform the person submitting the response of the nature of the deficiency."   Commerce's

Antidumping Manual expands on this statutory requirement by stating that "[an] analyst should

try to draft a supplemental questionnaire within one to two weeks after the receipt of the

questionnaire response."  Ch. 4 at 17.  Bebitz claims that "Commerce's issuance of the supplement

[sic] questionnaires here two months later is four to eight times longer than Commerce's own

standard of when they should be issued, violating Commerce practice."  Pl.'s Br. at 2.  Further,

Bebitz claims that the record supports its contention that:

> up to two months passed before Commerce issued supplemental questionnaires
> following Bebitz/Viraj's original questionnaire response . . . , Commerce issued
> six supplemental questionnaires . . . responses to which were all due within a
> six business day period . . . , [and] all of Bebitz/Viraj's initial extension requests
> were filed well in advance of deadlines; however Commerce denied all
> extension requests, in full or in part.

Id.  (citing IDM at 8).

The Government responds that Commerce promptly issued the supplemental

questionnaires, which served as sufficient notice of deficiencies and provided an opportunity to

correct those deficiencies.  Def.'s Br. at 10.  The Government notes that Commerce issued the first

supplemental questionnaire fifteen days after Bebitz submitted its final original questionnaire

response.  Id. at 11–12.  Contesting Bebitz's characterization of the record, Commerce explained

in the IDM that "the Bebitz/Viraj single entity ignores the events in this proceeding," which instead

include evidence of incomplete submissions, last-minute extensions, and untimely submissions.

IDM at 11–12.   The Government also notes that the subsequently issued supplemental

questionnaires "repeatedly referenced deficiencies with Bebitz's prior submissions" and provided

multiple opportunities for Bebitz to rectify those deficiencies.  Def.'s Br. at 11.  Coalition contends,

"Bebitz misstates the record and otherwise fails to recognize how its own actions delayed the agency's issuance of supplemental questionnaires."  Def.-Inter.'s Br. at 11.

The court finds that Commerce acted within its discretion in issuing supplemental questionnaires and rejecting the incomplete and untimely responses from Bebitz.  First, the applicable statute, 19 U.S.C. § 1677m(d), merely requires that Commerce "promptly inform" respondent of deficiencies in its response, without dictating a specific timeline.  The court concludes that Commerce may reasonably exercise its discretion to define the necessary amount of time in which the agency may identify a deficiency and then notify respondent thereof.  <u>See</u> <u>PSC VSMPO–Avisma</u>, 688 F.3d at 760.  Here, Commerce was in constant contact with Bebitz regarding its questionnaire responses, from the issuance of the first questionnaire to the issuance of the preliminary determination.  The record details the protracted communications between Commerce and Bebitz regarding requested databases of sales information from Bebitz in the correct and usable format.  <u>See</u> Background, <u>supra</u> Sec. B.i.  The Government concedes that Commerce issued the first supplemental questionnaire over a month after Bebitz submitted its Section A response and fifteen days after Bebitz submitted its Sections B–D responses.  Def.'s Br. at 11.  <u>See also</u> First Suppl. Questionnaire.  However, this delay resulted from Bebitz's own requests for extensions of time to submit its responses to Commerce's original questionnaire responses and failures to submit usable databases.  <u>See</u> Preliminary Decision Memo at 12 n.71.

Further, the Government's reliance on <u>Mukand</u>, 767 F.3d 1300, to support its assertion that Commerce provided Bebitz timely notice and adequate time to provide requested information is persuasive.  <u>See</u> Def.'s Br. at 12–13.  In <u>Mukand</u>, the Federal Circuit upheld the application of AFA to a respondent to whom Commerce had issued four supplemental questionnaires, in addition to an original questionnaire.  767 F.3d at 1306.  There, Commerce "explained why it was

unsatisfied with [respondent's] response and reiterated both the type of information it needed and why it was important." <u>Id.</u> Commerce also "warned [respondent] that its continued failure to provide the requested information may force Commerce to resort to facts otherwise available." <u>Id.</u> The Federal Circuit's decision is instructive because it indicates that, where Commerce states that it (1) needs certain information (2) by a certain deadline, Commerce may infer a lack of cooperation from a respondent's failure to comply with either of those requests. In fact, here, Commerce provided more than the discrete opportunity to remedy a deficient response -- it offered Bebitz multiple opportunities to provide the requested information in the format requested. <u>See, e.g.</u>, IDM at 11–14; Database Accommodation Letter. Therefore, the court concludes that Commerce provided sufficiently timely notice to Bebitz of the deficiencies in its responses and provided adequate time, including by granting multiple extension requests, to correct those deficiencies.

Finally, Commerce's Antidumping Manual is not dispositive of Bebitz's lack of notice or opportunity to respond here. First, the Antidumping Manual states that "[t]his manual is for the internal training and guidance of Enforcement and Compliance (E&C) personnel only . . . [and] [t]his manual cannot be cited to establish [Commerce] practice." Ch. 1 at 1. Further, it states that Commerce "should try to draft a supplemental questionnaire one or two weeks after the receipt of the questionnaire response," <u>id.</u> Ch. 4 at 17, and thus does not set a standard by which Commerce must operate in accordance with its own practice or by law. Bebitz cites to no authority stating otherwise and acknowledges that the Antidumping Manual "is not a binding legal document." Pl.'s Br. at 2 (citing <u>Koenig & Bauer-Albert AG v. United States</u>, 24 CIT 157, 165, 90 F. Supp. 2d 1284, 1292 n.13 (2000)). Thus, the court is unpersuaded that the Antidumping Manual requires the court to remand this issue to Commerce.

In sum, the court holds that Commerce's notice to Bebitz of deficiencies in its responses to the original questionnaires was supported by substantial evidence and otherwise in accordance with law.

## II.   Commerce Was Not Obligated to Grant in Full Each of Bebitz's Extension Requests.

Bebitz next claims that Commerce should have granted each of Bebitz's extension requests in full to provide it with sufficient time to respond to Commerce's requests for information. Pl.'s Br. at 3. Bebitz claims that Commerce failed to explain its denials of its full extension requests and therefore acted contrary to law when it applied AFA to calculate Bebitz's AD duty rate. Id. Bebitz supports its argument by citing to cases in which the court rejected Commerce's use of its discretion in connection with rejecting information from respondents. See id. at 3–4.[6] Bebitz further argues that "Commerce's discretion as to deadlines must be done consistent with the statutory mandate to calculate the most accurate dumping margin possible." Id. at 4–5 (citing Wuhu Fenglian Co. v. United States, 36 CIT 642, 648, 836 F. Supp. 2d 1398, 1403 (2012)).

---

[6] Bebitz cites to the following cases, which the court find are inapposite: Artisan Mfg. Corp. v. United States, 38 CIT __, __, 978 F. Supp. 2d 1334, 1338, 1344–45 (2014) (holding that Commerce abused its discretion "in the particular circumstances of this investigation" where a submission was filed shortly after the deadline); Grobest & I-Mei Indus. (Viet.) Co. v. United States, 36 CIT 98, 118, 815 F. Supp. 2d 1342, 1362 (2012) (holding that Commerce's rejection of voluntary responses was an abuse of discretion); Hebei Metals and Minerals Imp. & Exp. Co. v. United States, 28 CIT 1185, 1199, 26 ITRD 2058 (2004) (finding an abuse of Commerce's discretion in including aberrational data when determining import value counter to its past practice); NTN Bearing Corp. v. United States, 74 F.3d 1204, 1207–08 (Fed. Cir. 1995) (holding that Commerce impermissibly rejected respondent's clerical error correction); Timken Corp. v. United States, 434 F.3d 1345, 1353–54 (Fed. Cir. 2006) (holding that Commerce impermissibly rejected respondent's clerical error correction); Nippon Steel Corp. v. United States, 25 CIT 377, 146 F. Supp. 2d 835, 841–42 (2001) (holding that Commerce impermissibly rejected respondent's inadvertently omitted data, a holding which was later reversed by the Federal Circuit, 307 F.3d 1375); Chaparral Steel Co. v. United States, 901 F.2d 1097, 1103–04 (Fed. Cir. 1990) (reversing CIT decision to reject Commerce's interpretation of CVD statute); Usinor Sacilor v. United States, 18 CIT 1155, 1164, 872 F. Supp. 2d 1000, 1008 (1994) (holding that Commerce abused its discretion in rejecting a clarification of record information by respondent).

Finally, Bebitz contends that "Commerce had over eight months . . . to complete the investigation at the time . . . that Commerce first denied even one more day extension to Bebitz to answer the supplemental questionnaires in issue here."  Pl.'s Br. at 4 (citing IDM at 11 n.58).

The Government contends that Commerce did not abuse its discretion in granting, partially granting, and denying Bebitz's numerous and varied extension requests.  Def.'s Br. at 14.  The Government relies on Commerce's own regulation, 19 C.F.R. § 351.302(b), which states that "the Secretary may, for good cause, extend any time limit," and caselaw which emphasizes Commerce's discretion in making decisions regarding its procedures, including investigation deadlines.  Def.'s Br. at 14.

The court concludes that Commerce permissibly exercised its discretion in responding to Bebitz's various requests for extensions of time.  Congress has imposed strict statutory deadlines upon Commerce in AD investigations.  See 19 U.S.C. §§ 1673b(a), 1673d.  The statute mandates that Commerce issue its preliminary determination within 140 days of the initiation of the investigation and its final determination within seventy-five days of the preliminary determination. 19 U.S.C. §§ 1673b(b), 1673d(a)(1).  These deadlines may not be extended beyond an additional fifty days and an additional sixty days, respectively.  See 19 U.S.C. §§ 1673b(c), 1673d(a)(2). Therefore, Commerce must make determinations in line with its statutory obligations and deadlines.

Accordingly, Commerce has significant discretion in determining the procedures by which it will gather and analyze information necessary to meet the statutory deadlines imposed for AD investigations.  See PSC VSMPO–Avisma, 688 F.3d at 760.  Commerce's regulation indicates that Commerce has the discretion, not the obligation, to grant extensions of time.  See 19 C.F.R. § 351.302(b).  The court upholds Commerce's exercise of its discretion to set and enforce the

timelines of its investigations unless that discretion has been abused.  <u>Dongtai Peak Honey Indus.</u>

<u>v. United States</u>, 777 F.3d 1343, 1351 (Fed. Cir. 2015) (quoting <u>Yantai Timken</u>, 521 F. Supp. 2d

at 1371).

      In <u>Dongtai Peak Honey</u>, the Federal Circuit addressed the proper exercise of Commerce's

discretion in responding to extension requests.  777 F.3d 1343.  In response to the plaintiff's claim

that Commerce had sufficient time to grant its extension before completing its investigation, the

court stated that "Commerce should not be burdened by requiring acceptance of untimely filings

closer to the final deadline for the administrative review."  <u>Dongtai Peak Honey</u>, 777 F.3d at 1352.

Additionally, the court addressed the plaintiff's fairness and accuracy arguments, holding that

"Commerce's rejection of untimely-filed factual information does not violate a respondent's due

process rights when the respondent had notice of the deadline and an opportunity to reply."  <u>Id.</u> at

1353.

      These same principles apply here.  As the Government notes, Commerce provided reasons

for its partial grants and denials of Bebitz's requests for extensions.  Def.'s Br. at 14–15.  The

Government explains that Commerce "did not deem it prudent to grant the full requested extension

for supplemental responses."  <u>Id.</u> at 15.  Commerce also provided extensive reasons for its full

denials of Bebitz's final two extension requests, which included (1) previously requesting

information on at least half of the questions; (2) multiple past extensions of deadlines; (3) Bebitz's

prior participation in AD/CVD investigations; and (4) Commerce's need for the requested

information in order to complete its investigation by the statutory deadline.  Feb. 15 Extension

Denial.  <u>See also</u> Def.'s Br. at 15.  In total, Commerce granted or partially granted Bebitz thirteen

extensions during the investigation and denied in full only three of Bebitz's extension requests.

<u>See, e.g.</u>, First Sec. B–D Extension Grant; Feb. 14 Extension Resp.; Feb. 15 Extension Denial;

Feb. 16 Extension Grant.  Often, Bebitz sought multiple extensions for the same response.  See

Background, supra Section B.i.  In at least one instance, multiple extension requests resulted in

Commerce effectively granting Bebitz's original request for an extension of time in full.  See id.

This is substantial evidence that Commerce provided Bebitz ample notice of the deficiencies in its

responses and gave it multiple opportunities to remedy those deficiencies.

In challenging Commerce's decision to not fully grant each of Bebitz's extension requests,

Bebitz misunderstands the nature of Commerce's discretion.  As the Federal Circuit explained in

Dongtai Peak Honey, "it is not for [respondent] to establish Commerce's deadlines or to dictate to

Commerce whether and when Commerce actually needs the requested information."  777 F.3d at

1352 (quotations omitted).  Here, this court concludes that Commerce struck the proper balance

between finality and accuracy in rejecting Bebitz's untimely submissions and denying some of

Bebitz's extension requests in full.  Ultimately, Bebitz had nearly five months from the issuance

of the original questionnaire to provide the information requested by Commerce, in part because

of the numerous extensions that Commerce granted.  Yet, Bebitz failed to provide information it

was or should have been aware that Commerce required to complete its investigation and calculate

an AD duty rate.  Therefore, Commerce did not deny Bebitz a meaningful opportunity to provide

information or remedy deficiencies in its original questionnaires.  Given the statutory time

constraints imposed upon Commerce and its discretion in imposing time limits for responses, the

court thus agrees that Commerce was not obligated to grant Bebitz's full extension requests and

did not abuse its discretion in enforcing its own deadlines.

III.    ***Bebitz Failed To Provide the Requested Information Necessary for Commerce's Investigation and Failed To Act To the Best of its Ability in Responding to Commerce's Investigation Requests.***

Finally, Bebitz claims that Commerce, without substantial evidence and contrary to law, applied AFA to determine Bebitz's AD duty rate.  Pl.'s Br. at 5.  Bebitz argues that, contrary to Commerce's determination, it did act to the best of its ability in responding to Commerce's questionnaires, and it was unreasonable to expect that Bebitz could answer all of Commerce's requests for information in the time provided.  Id.  See also IDM at 8 (summarizing Bebitz's position that "Commerce failed to demonstrate that Bebitz/Viraj did not work to the best of its ability to achieve the impossible under the circumstances.  Bebitz/Viraj is a small company with no recent experience participating in AD cases.").  Furthermore, Bebitz claims that merely failing to provide information is insufficient for Commerce to apply AFA.  Pl.'s Br. at 5.

The Government responds that Commerce's decision was supported by substantial evidence "because Bebitz failed to provide necessary information to facilitate Commerce's calculation of an accurate [AD] duty rate, despite multiple opportunities to provide that information."  Def.'s Br. at 15.  The Government notes that Bebitz failed to submit complete, verifiable databases to Commerce as requested through the original and numerous subsequent supplemental questionnaires and that these databases were therefore unusable by Commerce.  Id. at 17.  Commerce outlined the deficiencies in Bebitz's responses in the IDM, which the Government argues provided the requisite substantial evidence to justify Commerce's "resort to facts available to fill the gap in the record."  Id. at 17–18.  Further, the Government contends that Bebitz failed to act to the best of its ability in responding to Commerce's requests despite the multiple opportunities Commerce provided.  Id. at 19.  Commerce also challenged Bebitz's assertion that it did not have experience participating in Commerce investigations, stating "Viraj,

in fact, requested to participate as a voluntary respondent and was subsequently selected as a

mandatory respondent for individual examination in <u>Stainless Steel Bar</u>, [82 Fed. Reg. 48,483

(Dep't Commerce Oct. 18, 2017)], and Bebitz participated in <u>Finished Flanges</u>[, 81 Fed. Reg.

85,928 (Dep't Commerce Nov. 29, 2016),] where Bebitz also requested to participate as a

voluntary respondent."  IDM at 10–11.  Thus, the Government argues that the application of AFA

to calculate Bebitz's AD duty rate was supported by substantial evidence and otherwise in

accordance with law.  <u>See</u> Def.'s Br. at 19.

The court sustains Commerce's application of AFA in this instance.  When Commerce

determines that either (1) the respondent failed to provide information requested or (2) the

respondent failed to act to the best of its ability, then Commerce may disregard respondent's

submissions and use information otherwise available, including the application of adverse

inferences.  <u>See</u> 19 U.S.C. § 1677e.  The Federal Circuit expounded on these two requirements in

<u>Nippon Steel</u>, 337 F.3d 1373.

### A.  *Failure of Bebitz to Provide Requested Information*

In <u>Nippon Steel</u>, the Federal Circuit explained that when Commerce determines that a

respondent failed to provide requested information, "[t]he reason for the failure is of no moment.

The mere failure of a respondent to furnish requested information -- for any reason -- requires

Commerce to resort to other sources of information to complete the factual record on which it

makes its determination."  337 F.3d at 1381.  Further, as the Federal Circuit upheld in <u>Dongtai

Peak Honey</u>, Commerce is not required to provide good cause or justification for rejecting

untimely submissions and proceeding as if respondent has not provided requested information.

777 F.3d at 1352.

After Commerce provided Bebitz several opportunities to correct deficiencies in its responses, Bebitz nevertheless failed to provide sales databases, cost reconciliations, and sales information.  IDM at 10.  Commerce further rejected the Supplemental Questionnaire C, Supplemental Questionnaire D, Supplemental Questionnaire V responses as untimely.[7]  Id. at 12–14.  Bebitz did not fail just once or even twice to fulfill these requests; rather, Bebitz failed to provide usable information to Commerce after more than eight questionnaires, each with extended deadlines, representing multiple opportunities for Bebitz to provide timely and accurate information.  See Background, supra Sec. B.  The failure to provide complete databases and sales information created gaps in information that rendered the databases unreliable and unusable by Commerce in the investigation.  IDM at 10–14.  The court holds that Commerce appropriately determined, based on substantial evidence, that Bebitz failed to provide timely and usable information.

### B.  Failure of Bebitz To Act to the Best of its Ability

As has been noted, in applying AFA based on a respondent's non-cooperation, Nippon Steel requires that Commerce conclude that the respondent failed both objectively and subjectively to act to the best of its ability.  337 F.3d at 1382–83.  The objective determination requires that "a

---

[7] Bebitz argues that "the Final Determination criticizes [Bebitz's] rejected questionnaire responses[,] [b]ut these questionnaire responses are not in the record." Pl.'s Br. at 6.  Bebitz claims that this denied it the "opportunity to defend its interests and to respond to such Final Determination criticism."  Id.  However, Bebitz does not provide either binding or persuasive authority that would support this claim.  See id.

Merely acknowledging the procedural history of Commerce's investigation does not equate to an unfair use of information to which Bebitz was unable to respond.  Further, Commerce's own regulation requires it exclude untimely material from consideration in its investigation.  19 C.F.R. § 351.104(a)(2)(iii) ("In no case will the official record include any document that the Secretary rejects as untimely filed").  Therefore, the court rejects Bebitz's argument that merely referencing the rejection of these untimely and incomplete submissions was improper.

reasonable and responsible importer would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations." Id. at 1382. The subjective determination requires that "the respondent under investigation not only has failed to promptly produce the requested investigation, but further that the failure to fully respond is the result of the respondent's lack of cooperation . . . in failing to put forth its maximum efforts to investigate and obtain the requested information from its records." Id. at 1382–83. "While intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate, the statute does not contain an intent element." Id. at 1383. Further, the Trade Preferences Extension Act of 2015 provided Commerce with wider discretion to use adverse inferences in proceedings before the agency to encourage full compliance with its requests. See Dates of Application of Amendments to the Antidumping and Countervailing Duty Laws Made by the Trade Preferences Extension Act of 2015, 80 Fed. Reg. 46,793, 46,794 (Dep't Commerce Aug. 6, 2018).

First, the Government argues that "Bebitz demonstrated that it was able to provide accurate information, as evidenced by its submission of other parts of its database and that it was aware of the importance of the information to the investigation given Commerce's multiple requests for the missing information," and thus Commerce determined that Bebitz did not objectively act to the best of its ability. Def.'s Br. at 19. In the IDM, Commerce explained that, contrary to Bebitz's claim, Bebitz and its affiliates had previously and recently participated in AD investigations. IDM at 10–11. Commerce also added that Bebitz was not a small company, as it claimed, but one of the largest exporters and producers of stainless steel flanges from India. Id. at 11. The court agrees that this evidence is sufficient to support Commerce's objective determination that a reasonable

exporter "would have known that the requested information was required to be kept and maintained."  See Nippon Steel, 337 F.3d at 1382.

Second, the Government contends that, in determining that Bebitz subjectively failed to act to the best of its ability, "Commerce offered Bebitz many opportunities to correct the data in the questionnaire responses and to provide additional necessary information."  Def.'s Br. at 19. Commerce explained that Bebitz's responses contained repeated deficiencies in information and failures to comply with Commerce's reporting requirements.  IDM at 13.  In fact, the number of questionnaires Commerce issued to Bebitz demonstrates Bebitz's repeated failure to provide Commerce the information necessary to complete its investigation.  Furthermore, Commerce made concessions to Bebitz in the information and format of data it requested that Bebitz provide. Database Accommodation Letter.  Nevertheless, Bebitz still failed to provide Commerce the information in the format requested for Commerce to use in making an accurate AD determination and calculation.  See IDM at 10.  Ultimately, Commerce concluded that Bebitz provided information that was "inaccurate and unusable" and databases that were incomplete and unreliable. Id.

Additionally, Bebitz repeatedly requested extensions shortly before deadlines, including in one instance only four minutes before the deadline.  Id. at 11–12.  In another instance, Bebitz "failed to notify Commerce that it experienced filing issues until after the deadline."  Id. at 12. The court therefore rejects Bebitz's claim that it was unable to survive Commerce's unreasonable requests for information.  See Pl.'s Br. at 5.  Nippon Steel does not require perfection in respondent's submissions, but merely their best efforts.  See 337 F.3d at 1382.  Under both the objective and subjective standards, Bebitz, quite simply, did not act to the best of its ability to provide Commerce timely and complete information.

Therefore, the court concludes that Commerce correctly determined that Bebitz failed to act to the best of its ability and failed to provide the information requested, and thus applied AFA based on substantial evidence and otherwise in accordance with law.

## CONCLUSION

For the above stated reasons, the court sustains Commerce's _Final Determination_ applying AFA to determine Bebitz's AD duty rate.

**SO ORDERED.**

/s/ _Gary S. Katzmann_
Gary S. Katzmann, Judge

Dated: March 3, 2020
New York, New York